UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANNE CUTLER, on Behalf of Herself and All Others Similarly Situated, and Derivatively on Behalf of ASSOCIATED ESTATES REALTY CORPORATION, | ) ) ) ) | Case No.: Judge: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CLASS AND DERIVATIVE ACTION |
| JEFFREY I. FRIEDMAN, RICHARD T. SCHWARZ, MICHAEL E. GIBBONS, JAMES A. SCHOFF, JAMES J. SANFILIPPO, DOUGLAS CROCKER II, JON A. FOSHEIN, BSREP II ARIES POOLING LLC, and BSREP II ARIES DE MERGER SUB INC., | ) ) ) ) ) ) ) ) ) ) | VERIFIED SHAREHOLDER CLASS AND DERIVATIVE ACTION COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY |
| Defendants, -and- | ) ) ) | |
| ASSOCIATED ESTATES REALTY CORPORATION, an Ohio corporation, | ) ) ) | |
| Nominal Defendant. | ) ) ) | |
| | ) | DEMAND FOR JURY TRIAL |

## SUMMARY OF THE ACTION

1.     This is a shareholder class and derivative action brought by plaintiff on behalf of Associated Estates Realty Corporation ("Associated Estates" or the "Company") against the members of Associated Estates' Board of Directors (the "Board"), BSREP II Aries Pooling LLC ("Brookfield"), and BSREP II Aries DE Merger Sub Inc. ("Merger Sub"). This action seeks to enjoin defendants from further breaching their fiduciary duties in their pursuit of a sale of the Company under pressure from an activist investor and through an unfair process that was tilted in favor of Brookfield (the "Proposed Acquisition"). Defendants announced on April 22, 2015, that the Board had agreed to sell Associated Estates to Brookfield, wherein Brookfield will acquire all of the outstanding common stock of Associated Estates for $28.75 per share in cash (the "Proposed Consideration").

2.     Associated Estates is a real estate investment trust (REIT) with a portfolio of fifty-six (56) apartment communities containing 15,004 units located in ten (10) states, which include two committed acquisitions with 681 units and five apartment communities with 1,446 units in various stages of active development. During the past ten years, Associated Estates has delivered total return to its shareholders of approximately 195%, nearly double the approximately 98% return of the Morgan Stanley REIT Index. In 2014, the Company's total return of 52.6% was the highest among the public multi-family REITs.

3.     The Company continues to enhance its successful track record of improving margins while increasing the value of its portfolio by efficiently recycling capital through property acquisitions and dispositions. This ongoing strategic plan, part of the Board's year old "Three-Year Strategic Plan," continues to create ever-increasing value for Associated Estates' shareholders. During 2014, for example, the Company's five property dispositions produced gains

- 1 -

of over $133 million and generated an internal rate of return of 16.2%. Following its strategy has enabled the Company to create a strong portfolio of newer, high-quality properties in growing markets, enabling continued and accelerating growth in both shareholder returns and quarterly cash dividends, which alone have increased by 18% over the past three years.

4.      Associated Estates' strong results and strategic direction were apparently not enough, however, for one of its shareholders.  In June 2014, real estate investment firm Land and Buildings ("L&B"), a short-term shareholder and activist investor with a record of attempting to bully companies, began pressuring the Company to sell itself.  By November 2014, L&B increased this pressure by announcing its intention to launch a proxy fight, and ultimately, despite substantial appeasement efforts by Associated Estates, issued a proxy nominating its own slate of directors for election at the Company's May 22, 2015 annual meeting.  Prior to the pressure exerted by L&B, the Company had not been seeking to sell itself, and for good reason given its excellent operating results, particularly in the 2014 fiscal year under the revamped strategic plan.

5.      Faced with this pressure, however, after months of ineffectively attempting to appease L&B, and facing the prospect of losing control of Associated Estates, the Board caved to the activist's bullying tactics and agreed to the Proposed Acquisition, rather than allow the Company's strategic plans to run their course, and provide long-term value to shareholders.  By selling at this inopportune time, the Company's ordinary shareholders will not reap the benefit of the fast growing returns and dividend payouts that Associated Estates has begun to achieve through its new Three-Year Strategic Plan, adopted by the Board in 2014.  And as a result of the Proposed Acquisition, set to close in the second half of 2015, the Associated Estates shareholders will even be precluded from receiving their regular dividend payment expected around the beginning of August, even though the deal will likely not have been completed by then.

6.     In order to lock up the Proposed Acquisition, the defendants adopted numerous preclusive and onerous deal protection devices, which are set forth in the Agreement and Plan of Merger dated April 22, 2015 (the "Merger Agreement").  These provisions, which collectively preclude any competing offers for the Company, include: (i) a termination fee of $60 million if the Company accepts a competing bid, or up to $20 million in expenses if its shareholders simply vote not to approve the Proposed Acquisition; (ii) a no-solicitation clause; and (iii) a four-day matching rights period during which Brookfield can match any superior proposal received by the Company.

7.     In short, the Proposed Acquisition is designed to unlawfully divest Associated Estates' public shareholders of the Company's valuable assets.  To remedy defendants' breaches of fiduciary duties and other misconduct, plaintiff seeks injunctive relief preventing consummation of the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain a transaction that provides the best possible terms for shareholders, or rescission of the Merger Agreement to the extent that the Proposed Acquisition has been consummated.

## JURISDICTION AND VENUE

8.     Jurisdiction is conferred by 28 U.S.C. §1332.  Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District because plaintiff's claims arose in this District, where most of the actionable conduct took place, where most of the documents are electronically

stored, and where the evidence exists.  Associated Estates is incorporated in Ohio and is headquartered in this District.  Moreover, each of the Individual Defendants (as defined herein), as Company officers and/or directors, has extensive contacts within this District.

## PARTIES

11.     Plaintiff Anne Cutler is a shareholder of Associated Estates.  Plaintiff is a citizen of Massachusetts.

12.     Nominal defendant Associated Estates is an Ohio corporation with principal executive offices located at 1 AEC Parkway, Richmond Heights, Ohio.   Associated Estates is a real estate investment trust and a member of the S&P 600, Russell 2000, and MSCI US REIT Indices.  Upon completion of the Proposed Acquisition, Associated Estates will become a wholly owned subsidiary of defendant Brookfield.

13.     Defendant Jeffrey I. Friedman ("Friedman") is Associated Estates' President and has been since December 2002 and Chief Executive Officer, Chairman of the Board, and a director and has been since July 1993.  Defendant Friedman was also President of Associated Estates from July 1993 to February 2000.  Defendant Friedman held various other positions with the Company beginning in 1974.  Defendant Friedman is a citizen of Ohio.

14.     Defendant Richard T. Schwarz ("Schwarz") is the Lead Director of Associated Estates and has been since at least March 2006 and a director and has been since 1994.  Defendant Schwarz is a citizen of Ohio.

15.     Defendant Michael E. Gibbons ("Gibbons") is an Associated Estates director and has been since October 2004.  Defendant Gibbons is a citizen of Ohio.

16.     Defendant James A. Schoff ("Schoff") is an Associated Estates director and has been since May 2006.  Defendant Schoff is a citizen of Florida.

- 4 -

17.     Defendant James J. Sanfilippo ("Sanfilippo") is an Associated Estates director and has been since February 2012. Defendant Sanfilippo is a citizen of Ohio.

18.     Defendant Douglas Crocker II ("Crocker") is an Associated Estates director and has been since December 2014. Defendant Crocker is a citizen of Florida.

19.     Defendant Jon A. Fosheim ("Fosheim") is an Associated Estates director and has been since February 2015. Defendant Fosheim is a citizen of California.

20.     Defendant Brookfield is a Delaware limited liability company. Accordingly Brookfield is a citizen of Delaware.

21.     Defendant Merger Sub is a Delaware corporation and wholly owned subsidiary of defendant Brookfield. Accordingly Merger Sub is a citizen of Delaware. Upon completion of the Proposed Acquisition, defendant Merger Sub will merge with and into Associated Estates and cease its separate corporate existence.

22.     The defendants named above in ¶¶13-19 are sometimes collectively referred to herein as the "Individual Defendants."

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

23.     Under Ohio law, the officers and directors of a publicly traded corporation have fiduciary duties of loyalty, good faith, and care to shareholders. To diligently comply with these duties, neither the directors nor the officers may take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage, inhibit, or deter alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits themselves from complying with their fiduciary duties;

- 5 -

(d)     will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the officers and/or directors with preferential treatment at the expense of, or separate from, the public shareholders.

24.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as officers and/or directors of Associated Estates, are obligated under Ohio law to refrain from:

(a)     participating in any transaction where the officers' or directors' loyalties are divided;

(b)     participating in any transaction where the officers or directors receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

25.     Defendants, separately and together, in connection with the Proposed Acquisition, are knowingly or recklessly violating their fiduciary duties and/or aiding and abetting such breaches, including the Individual Defendants' duties of loyalty, good faith, and independence owed to plaintiff and other public shareholders of Associated Estates.  Certain of the Individual Defendants stand on both sides of the transaction, are engaging in self-dealing, are obtaining for themselves personal benefits, including personal financial benefits not shared equally by plaintiff or the Class (as defined herein).  Accordingly, the Proposed Acquisition will benefit the Individual Defendants in significant ways not shared with Class members.  As a result of the Individual Defendants' self-dealing and divided loyalties, neither plaintiff nor the Class will receive adequate or fair value for their Associated Estates common stock in the Proposed Acquisition.

26.     Because the Individual Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, and independence in connection with the Proposed Acquisition, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price, and terms, is placed upon defendants as a matter of law.

### BACKGROUND

27.     Despite the Company's impressive portfolio, strong growth, and revitalized strategy, on June 3, 2014, L&B, which had just acquired over 1% of the Company's shares, demanded that the Board sell Associated Estates. In its letter to the Board, which included references to the Company's impressive holding and growth potential, L&B stated: "AEC's high quality, high growth apartment portfolio is not best suited for the public markets in its current form and that shareholder value can best be maximized through the sale of the company." The letter also contained an implicit threat aimed at the Company's directors, as well as a thinly veiled reference to the Board's entrenchment and lack of independence:

> In addition to considering a sale of the company to maximize shareholder value, *a board or management refresh should be undertaken.* New perspectives could lead to an improved strategic direction as well as greater market acceptance. The average tenure of the current board of directors is over 14 years.

28.     By November 14, 2014, after months of continued positive results from Associated Estates, including strong early showings from its Three-Year Strategic Plan, L&B had increased its holdings in the Company to 2.9% of the shares, and began to substantially ratchet up its pressure on the Board.

29.     In a press release issued by L&B on November 17, 2014, it announced its intention to nominate its own slate of seven directors to replace the entire Board of Associated Estates. L&B argued that the Company's stock should be trading at a premium to Associated Estates' $29 net

asset value, and provided more details on the Company's "entrenched, intertwined and stale Board

of Directors," including that:

> The three member Executive committee is comprised of Jeff Friedman, his brother-in-law, and AEC's long-time lawyer and the Executive committee" ... possesses the power of the Board of Directors in the management of the business and affairs of the Company..."; given the clear lack of independence, in our view, it is no wonder that shareholder value has not been maximized.

30.     Associated Estates responded with a press release of its own the same day, laying

out the reasons why it believed it had "the right plan and people" to create maximum, long-term

value for shareholders, and delineating the Company's achievements and prospects:

> ...While we are always open to potentially value-enhancing alternatives, at this time we believe the best path to maximizing long-term shareholder value is the continued successful execution of the Company's strategic plan, which includes:
>
> •       Maximizing total shareholder returns through a combination of prudent capital appreciation and well-covered dividend income growth
>
> •       Further strengthening our investment grade balance sheet, reducing our ratio of secured debt to undepreciated book value and maintaining our industry leading low cost of debt
>
> •       Efficiently recycling capital to grow our best-in-class portfolio in highly attractive submarkets while reducing risk through deliberate diversification
>
> •       Creating value via shrewd acquisitions and utilizing our preeminent, national development platform to skillfully execute our fully funded development pipeline
>
> •       Opportunistically harvesting value with strategic dispositions at attractive prices
>
> •       Optimizing our operations by rigorously managing expenses and attracting, retaining and motivating the most effective leaders and team members in our industry
>
> While we respect Land and Buildings' views, Associated Estates remains keenly focused on the execution of our strategic plan. The Company's track record of delivering industry leading, long-term, total shareholder returns, as well as the following, notable achievements, affirm that Associated Estates has the right plan and the right team in place to successfully grow the company and create value for shareholders and other stakeholders:

- Cultivated a diversified portfolio of high-quality properties in high growth submarkets with an average age of 15 years (second youngest in the multifamily sector) through the disposition of 47 assets since 2005 (average age of 22 years) while acquiring 24 properties (average age of six years)

- Increased average property revenue per occupied unit from $883 in 2007 to $1,238 in 2014

- Grew average annual same store NOI by 3.9% from 2004 through 2013 (second best growth rate in the multifamily sector over that period)

- Increased the quarterly cash dividend by 18% over the last three years, while maintaining one of the lowest payout ratios in the multifamily sector

- Achieved investment grade ratings from Moody's, Fitch and S&P, while reducing our net debt to annualized EBITDA from 8.1x in 2011 to 6.9x at Q3 2014, increasing our fixed charge coverage ratio from 2.3x in 2011 to 3.4x times at Q3 2014, and expanding unencumbered NOI from 44.2% in 2011 to 73.8% at Q3 2014

- Demonstrated the tremendous value creation power of our development platform with the 2014 sale of our Vista Germantown property for $53.3 million, which represented a market cap rate of 4.5%, an IRR of 19.8% and a gain of $15.8 million (42%)

- Validated the quality of our fully funded development pipeline, while reducing financial and execution risk, by forming 50/50 joint ventures with AIG Global Real Estate (350 8th project in San Francisco's SoMa Neighborhood) and Legendary Developments (950 East Third project in downtown Los Angeles' Arts District)

31.     These tactics continued over the subsequent months, with L&B repeatedly calling into question the independence and qualifications of the Board and insisting the Company be taken private, and Associated Estates constantly rebutting L&B's allegations and reminding the public that it was executing a successful strategic plan.

32.     Meanwhile, though, the Board began caving to certain of L&B's demands. Associated Entities replaced two directors, one in late 2014 and another in early 2015, announced that it was proposing to appoint a third new director to add as an eighth Board member, and ultimately went so far as to agree to add two appointees chosen by L&B to the Board.

33.    L&B was not to be appeased, however. It continually described the Company's actions as "too little, too late," and instead became increasingly emboldened by the Board's concessions. Matters came to a head on March 12, 2015, when L&B announced that it was nominating a slate of three directors to replace defendants Gibbons, Schoff, and Schwarz, three of the Company's longest tenured directors, finally leaving the Board with only the options to bow under L&B's pressure, or face a shareholder vote with the very realistic possibility of losing their control over the Company in a shameful and reputation damaging way.

## THE PROPOSED ACQUISITION

34.    With the failure of its appeasement strategy, and in the midst of a proxy fight, the Board finally caved to this activist pressure.  On April 22, 2015, Associated Estates issued a press release announcing that the Individual Defendants had agreed to sell Associated Estates to Brookfield.  Under the terms of the agreement, holders of Associated Estates common stock will receive $28.75 per share in cash for each share of Associated Estates common stock they own. The Proposed Acquisition values Associated Estates at approximately $2.5 billion, including debt. The press release stated, in relevant part:

> CLEVELAND, April 22, 2015 – Associated Estates Realty Corporation ("Associated Estates") (NYSE, NASDAQ: AEC) today announced its Board of Directors has unanimously approved a definitive merger agreement under which a real estate fund managed by Brookfield Asset Management ("Brookfield") (NYSE/TSX: BAM; Euronext: BAMA) will acquire all outstanding shares of common stock of Associated Estates for $28.75 per share in cash. The transaction is valued at approximately $2.5 billion including the assumption of debt.

> Brookfield is a global alternative asset manager with more than $200 billion in assets under management. Brookfield has over a 100-year history of owning and operating assets with a focus on property, renewable energy, infrastructure and private equity. Brookfield Property Group, Brookfield's largest investment platform, comprises of sector-specific portfolios in the multifamily, office, retail, industrial, and hotel sectors.

> Jeffrey I. Friedman, Chairman and Chief Executive Officer, said, "In December 2014, we announced that our Board was undertaking a thorough business review

with the assistance of our financial advisor. After analyzing the Company's strategy, assets and other opportunities, including running a process involving a number of qualified potential buyers, the Board unanimously determined that this transaction is the best course of action to maximize shareholder value. We are pleased that Brookfield recognizes the value inherent in our income producing properties, development projects and the platform we have built. We are also excited that this transaction will deliver compelling, immediate and certain value to all Associated Estates shareholders."

Approvals and Anticipated Closing

Completion of the transaction is contingent upon customary closing conditions. The Company will convene a special meeting to seek the approval of Associated Estates shareholders, and the annual meeting previously scheduled for May 22, 2015 has been postponed indefinitely. The transaction is not contingent on receipt of financing by Brookfield.

Closing is expected to occur in the second half of 2015. Associated Estates' headquarters will remain in Richmond Heights, Ohio.

First Quarter 2015 Financial Results and Dividend

Associated Estates will release financial results for its first quarter 2015 on Friday, May 1, 2015. In light of today's announcement, the Company will not hold a conference call to discuss its first quarter financial results.

The Company intends to pay the previously announced common stock dividend of $0.21 per share on May 1, 2015 to shareholders of record as of April 15, 2015. The Company does not expect to pay additional dividends prior to the closing of the merger.

35.     Also on April 22, 2015, the Company entered into the Merger Agreement that contains a number of draconian deal protection devices designed to preclude any competing bids for Associated Estates from emerging in the period following the announcement of the Proposed Acquisition, which effectively locked-up the deal with Brookfield, thereby eliminating the pressure L&B was exerting on the Board. The inclusion of these provisions, as detailed below, constitutes a further breach of the Individual Defendants' fiduciary duties.

36.     Under the Merger Agreement, Associated Estates is subject to a no-solicitation clause that prohibits the Company from seeking a superior offer for its shareholders. Specifically, section 5.2(a) of the Merger Agreement states, in pertinent part:

> ...The Company and its Subsidiaries will not, and will direct each of their respective Representatives not to (A) directly or indirectly, solicit, initiate or knowingly facilitate or encourage (including by way of furnishing non-public information) any inquiries regarding, or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, a Company Takeover Proposal, (B) engage in or otherwise participate in any discussions or negotiations regarding, or furnish to any other Person any non-public information in connection with or for the purpose of encouraging or facilitating, a Company Takeover Proposal, or (C) enter into any letter of intent, agreement in principle, merger agreement, acquisition agreement, investment agreement or other agreement of any kind with respect to a Company Takeover Proposal.

37.     Though the Merger Agreement ostensibly has a "fiduciary out" provision that allows the Company to negotiate with other bidders, this provision would require a potential acquiror to first make an unsolicited offer. Without access to non-public information, which the Company is prevented from offering under the Merger Agreement prior to the receipt of an offer that the Company reasonably expects to lead to a superior deal, no other bidders will emerge to make a superior proposal.

38.     Furthermore, under section 5.2(d) of the Merger Agreement, should it receive an unsolicited bid, the Company must notify Brookfield of the bidder's offer. Thereafter, should the Board determine that the unsolicited offer is superior, Brookfield is granted four calendar days to amend the terms of the Merger Agreement to make a counter offer that only needs to be as favorable to the Company's shareholders as the unsolicited offer. Brookfield will be able to match the unsolicited offer because it is granted unfettered access to the unsolicited offer, in its entirety, eliminating any leverage the Company has in receiving the unsolicited offer.

- 12 -

39.     Also, pursuant to section 8.2 of the Merger Agreement, Associated Estates must pay Brookfield a $60 million termination fee if it accepts a superior proposal, or up to $20 million in expenses if its shareholders elect to vote down the Proposed Acquisition.

### THE PROPOSED ACQUISITION SHORTCHANGES ASSOCIATED ESTATES' SHAREHOLDERS

40.     The Proposed Acquisition is a good deal for the short-term activist shareholder. L&B, which bullied the Company into the sale, is getting a great return for holding onto the stock for less than a year. The same cannot be said for the rest of the Company's shareholders. The Proposed Acquisition is capping Associated Estates' stock price just as the Company's strategic plan is starting to produce strong shareholder returns. Rather than let the stock trade freely, the Board is selling now at the insistence of a large shareholder, albeit one that owns less than 5% of the Company.

41.     Further, the Board, under pressure from L&B and at risk of the embarrassment of having control over Associated Estates wrested from them at the upcoming annual meeting, agreed to sell the Company for well less than even L&B argued it should be trading for. On January 28, 2015 and again on February 27, 2015, L&B argued that Associated Estates was worth $37 per share. The Company's shareholders, however, will receive 22% less than that. L&B will not mind the discount, however, given the astronomical windfall the Proposed Acquisition nonetheless enables them to cash out.

42.     The Proposed Acquisition will also unfairly rob the Company's shareholders of a dividend payment they would have expected to receive around the beginning of August. These dividend payments, which have grown 18% in the past three years and will now cease, have comprised a valuable portion of the total return for the Company's shareholders. However, although the Proposed Acquisition will likely not close until later in the second half of 2015,

- 13 -

Associated Estates has already stated that it does not expect to pay a dividend after May.  As such, the Company's shareholders aside from defendants and L&B will miss out on an aggregate dividend payout of over $11 million, assuming the dividend would have bucked the prevailing trend and failed to grow.

### SELF-DEALING

43.  By reason of their positions with Associated Estates, the Individual Defendants have access to non-public information concerning the financial condition and prospects of the Company.  Thus, there exists an imbalance and disparity of knowledge and economic power between the Individual Defendants and the public shareholders of Associated Estates.  Therefore, it is inherently unfair for the Individual Defendants to execute and pursue any proposed acquisition agreement under which they will reap disproportionate benefits to the exclusion of obtaining fair value for shareholders.  Instead, the Individual Defendants disloyally placed their own interests first, and tailored the terms and conditions of the Proposed Acquisition to meet their own personal needs and objectives.

44.  Specifically, by caving to the demands of L&B and agreeing to sell the Company, each member of the Board has saved himself from the professional embarrassment and severe reputational damage of having control of the Board wrested away through a proxy battle following the Board's failed negotiations and appeasement tactics.

45.  Further, under Section 2.3 of the Merger Agreement, all of the stock options and restricted shares owned by the Individual Defendants will immediately vest and be cashed out upon consummation of the Proposed Acquisition.  The Company's Current Report on Form 8-K filed with the U.S. Securities and Exchange Commission on April 27, 2015 summarizes those provisions as follows:

- 14 -

• each option to purchase Company Common Shares ("Option") that is outstanding and unexercised at the Effective Time (whether vested or unvested) will become fully vested and be cancelled, extinguished and converted into the right of the holder to receive an amount in cash, without interest, equal to the product of (i) the total number of Company Common Shares issuable upon exercise of such Option and (ii) the excess, if any, of the Per Share Merger Consideration over the exercise price per share of such Option;

• each share of restricted stock granted under any Company equity plan ("Restricted Share") that is outstanding immediately before the Effective Time (whether vested or unvested, and including restricted stock granted as dividends) will, as of immediately before the Effective Time, become vested and will be treated as an outstanding Company Common Share that will be canceled and extinguished and converted into the right to receive the Per Share Merger Consideration, without interest; to the extent the performance period relating to any Restricted Share that remains subject to performance-based vesting criteria ("Performance Restricted Share") has not expired as of the Effective Time, the Performance Restricted Share will vest in that number of Company Common Shares determined as if the applicable performance-based vesting criteria had been achieved at the maximum level; to the extent the performance period relating to any Performance Restricted Share has expired as of the Effective Time, the Performance Restricted Share will vest in that number of Company Common Shares determined at the end of the performance period based on actual performance through the end of the performance period;

As a result of this provision, each non-executive member of the Board will receive immediate vesting of his $100,000 in annual restricted stock awards.  Defendant Friedman has also guaranteed himself an immediate and substantial financial windfall under this provision should the Proposed Acquisition be consummated, as he alone will reap a nearly $8 million financial windfall by virtue of accelerating equity awards.

46.     The Proposed Acquisition is wrongful, unfair, and harmful to Associated Estates' public shareholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of the Class members.  Specifically, defendants are attempting to deny plaintiff and the Class their shareholder rights through the sale of Associated Estates via an unfair process.   Accordingly, the Proposed

Acquisition will benefit the Individual Defendants at the expense of Associated Estates shareholders.

## THE UNFAIR AND INADEQUATE PROCESS

47.     In order to meet their fiduciary duties, the Individual Defendants are obligated to explore and negotiate transactions at arm's length, and not structure a preferential deal for themselves.   Due to the Individual Defendants' eagerness to enter into a transaction with Brookfield, they failed to implement a fair process on behalf of Associated Estates shareholders.

48.     As a result of defendants' conduct, Associated Estates public shareholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company.   The Proposed Consideration does not reflect the true inherent value of the Company that was known only to the Individual Defendants, as officers and directors of Associated Estates, and Brookfield at the time the Proposed Acquisition was announced.

49.     In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

- Withdraw their consent to the merger of Associated Estates with Brookfield and allow the shares to trade freely—without impediments such as the no-solicitation clause, matching rights, and termination fee;

- Act independently so that the interests of Associated Estates' public shareholders will be protected;

- Adequately ensure that no conflicts of interest exist between defendants' own interests and their fiduciary obligation to maximize shareholder value or, if such

conflicts exist, to ensure that all conflicts be resolved in the best interests of Associated Estates' public shareholders; and

- Solicit competing bids to Brookfield's offer to assure that the Company's shareholders are receiving fair value for their shares.

50.     The Individual Defendants have also approved the Proposed Acquisition so that it transfers 100% of Associated Estates' unique assets, revenues, and profits to Brookfield, thus all of Associated Estates' operations will now accrue to the benefit of Brookfield.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action for herself and on behalf of all holders of Associated Estates common stock which have been or will be harmed by the conduct described herein (the "Class"). Excluded from the Class are the defendants and any individual or entity affiliated with any defendant.

52.     This action is properly maintainable as a class action.

53.     The Class is so numerous that joinder of all members is impracticable. According to the Merger Agreement, there were more than 57.8 million shares of Associated Estates common stock outstanding as of April 21, 2015.

54.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

(a)     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

- 17 -

(b)     whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Acquisition;

(c)     whether the Individual Defendants have breached any of their other fiduciary duties owed to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, and fair dealing;

(d)     whether Brookfield and/or Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duties; and

(e)     whether plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

55.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

56.     Plaintiff has retained competent counsel experienced in litigation of this nature and will fairly and adequately represent and protect the interests of the Class.

57.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

58.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

59.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

60.    Plaintiff brings this action derivatively in the right and for the benefit of Associated Estates to redress injuries suffered, and to be suffered, by Associated Estates as a direct result of the breaches of fiduciary duty, as well as the aiding and abetting thereof, by defendants.

61.    Plaintiff will adequately and fairly represent the interests of Associated Estates and its shareholders in enforcing and prosecuting its rights.

62.    Plaintiff is and was an owner of the stock of Associated Estates during all times relevant to the Individual Defendants' wrong course of conduct alleged herein.

63.    Plaintiff has not made a demand on the Board to file suit for the breaches of fiduciary duty alleged herein because such a demand would be a futile and useless act, particularly for the following reasons:

(a)    each of the directors knew of and/or directly benefited from the wrongdoing complained of herein;

(b)    each member of the Board has been named as a defendant to this lawsuit;

(c)    in order to bring this suit, all of the directors of Associated Estates would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(d)    the acts complained of constitute violations of the fiduciary duties owed by Associated Estates officers and directors and these acts are incapable of ratification;

(e)    any suit by the directors of Associated Estates to remedy these wrongs would likely expose the Individual Defendants and Associated Estates to further civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

- 19 -

(f)     each member of the Associated Estates Board is, directly or indirectly, the recipient of remuneration paid by the Company, including benefits, stock options, and other emoluments by virtue of their Board membership and control over the Company, the continuation of which is dependent upon their cooperation with the other members of the Board, and their participation and acquiescence in the wrongdoing set forth herein and are, therefore, incapable of exercising independent objective judgment in devising whether to bring this action;

(g)     because their association as directors of the Company and their positions as present or former employees, the directors are dominated and controlled so as not to be capable of exercising independent objective judgment; and

(h)     Associated Estates' current and past officers and directors are protected by directors and officers' liability insurance against personal liability for their breaches of fiduciary duty alleged in this Complaint, which they caused to Company to purchase for their protection with corporate funds, i.e., monies belonging to the shareholders of Associated Estates.  However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions which eliminate coverage for any action brought directly by Associated Estates against these defendants, known as, inter alia, the "insured versus insured exclusion."  As a result, if these directors were to sue themselves or certain of the officers of Associated Estates there would be no directors and officers' insurance protection and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and may provide a basis for the Company to effectuate recovery.  If there is no coverage pursuant to directors and officers'

liability insurance, the defendant directors will not cause Associated Estates to sue them, since they will face a large uninsured liability.

64.     Plaintiff has not made any demand on Associated Estates' shareholders to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     Associated Estates is a publicly traded company with over 57.8 million shares outstanding, and thousands of shareholders; and

(b)     making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders.

65.     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Class Claim for Breach of Fiduciary Duties Against the Individual Defendants

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     The Individual Defendants have violated the fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of Associated Estates and have acted to put their personal interests ahead of the interests of Associated Estates' shareholders.

68.     By the acts, transactions, and course of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value inherent in and arising from Associated Estates.

69.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, and independence owed

to the shareholders of Associated Estates.

70.     Because Individual Defendants dominate and control the business and corporate affairs of Associated Estates, and have access to private, corporate information concerning Associated Estates' assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Associated Estates which makes it inherently unfair for them to pursue and recommend any proposed acquisition wherein they will reap disproportionate benefits reached through an unfair process.

71.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

72.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Acquisition which will exclude the Class from its fair share of Associated Estates' valuable assets and operations, and/or benefit defendants in the unfair manner complained of herein, all to the irreparable harm of the Class.

73.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

74.     As a result of the Individual Defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of Associated Estates' assets and operations. Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the

Proposed Acquisition terms, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

75.     Plaintiff and the members of the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

**COUNT II**

**Class Claim for Aiding and Abetting Breaches of Fiduciary Duty Against
Defendants Brookfield and Merger Sub**

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     Defendants Brookfield and Merger Sub aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the public shareholders of the Company, including plaintiff and the members of the Class.

78.     The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

79.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

80.     Defendants Brookfield and Merger Sub colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

81.     Defendants Brookfield and Merger Sub participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests.   Defendants Brookfield and Merger Sub obtained and will obtain both direct and indirect benefits from

colluding in or aiding and abetting the Individual Defendants' breaches. Defendants Brookfield and Merger Sub will benefit, inter alia, from the acquisition of the Company at an inadequate and unfair price if the Proposed Acquisition is consummated.

82.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## COUNT III

### Derivative Claim for Breach of Fiduciary Duties and Aiding and Abetting Against All Defendants

83.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

84.     The Individual Defendants, aided and abetted by defendants Brookfield and Merger Sub, have violated their fiduciary duties of care, loyalty, good faith, and independence owed to the Company and its public shareholders and have acted to put their personal interests ahead of the interests of the Company.

85.     The Individual Defendants have violated their fiduciary duties by entering into the Proposed Acquisition without regard to the fairness of the transaction to Associated Estates and its public shareholders. Defendants Brookfield and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duties owed to the Company and its shareholders.

86.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their fiduciary duties of loyalty, good faith, and independence owed to Associated Estates and its shareholders because, among other reasons, they failed to ensure a fair process and/or aided and abetted in the same.

87. By reason of the foregoing acts, practices, and course of conduct, the defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations towards the Company and its shareholders.

88. As a result of the actions of defendants, the Company and its shareholders have been and will be irreparably harmed.

89. Unless the Proposed Acquisition is enjoined by the Court, defendants will continue to breach their fiduciary duties owed to the Company and its shareholders, will not engage in arm's-length negotiations on the Proposed Acquisition's terms, and may consummate the Proposed Acquisition, all to the irreparable harm of the Company and its shareholders.

90. The Company and its shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can the Company and its shareholders by fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in her favor and in favor of the Class and against defendants as follows:

A. Declaring that this action is properly maintainable as a derivative and class action;

B. Declaring and decreeing that the Proposed Acquisition represents a breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

C. Rescinding, to the extent already implemented, the Merger Agreement agreed to in connection with the Proposed Acquisition;

D. Enjoining defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company

adopts and implements a procedure or process reasonably designed to enter into a merger agreement providing the best possible value for shareholders;

        E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Associated Estates and obtain a transaction which is in the best interests of Associated Estates' shareholders;

        F.      Imposition of a constructive trust in favor of plaintiff and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

        G.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

        H.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 30, 2015                          CIANO & GOLDWASSER, L.L.P.


                                               */s/ Andrew S. Goldwasser*
                                               ANDREW S. GOLDWASSER
                                               (#0068397)
                                               1610 Midland Building
                                               101 Prospect Avenue, West
                                               Cleveland, OH 44115
                                               Telephone: (216) 658-9900
                                               Facsimile: (216) 685-9920
                                               asg@c-g-law.com

                                               ROBBINS ARROYO LLP
                                               STEPHEN J. ODDO (motion for *pro
                                               hac vice* admission pending)
                                               EDWARD B. GERARD (motion for
                                               *pro hac vice* admission pending)
                                               JUSTIN D. RIEGER (motion for *pro
                                               hac vice* admission pending)
                                               600 B Street, Suite 1900
                                               San Diego, CA 92101
                                               Telephone: (619) 525-3990
                                               Facsimile: (619) 525-3991
                                               brobbins@robbinsarroyo.com
                                               soddo@robbinsarroyo.com
                                               egerard@robbinsarroyo.com
                                               jrieger@robbinsarroyo.com

                                               Attorneys for Plaintiff

1026997_6

<u>VERIFICATION</u>

I, Anne Cutler, hereby declare as follows:

I am the plaintiff in the within entitled action.  I have read the Verified Shareholder Class and Derivative Action Complaint Based upon Self-Dealing and Breach of Fiduciary Duty. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: ___4/29/15_____

___Anne Cutler_____
ANNE CUTLER