UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE ASSOCIATED ESTATES REALTY CORPORATION SHAREHOLDER LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Lead Case No. 1:15-cv-00857-DCN<br><br>(Consolidated with No. 1:15-cv-00928)<br><br>Judge: Donald C. Nugent<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR: (i) FINAL APPROVAL OF SETTLEMENT; (ii) CERTIFICATION OF SETTLEMENT CLASS; AND (iii) APPROVAL OF REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS ..................................................................................4

    A.    Procedural History ..................................................................................4

    B.    Settlement Negotiations ...........................................................................6

    C.    Preliminary Approval and Notice to Shareholders .................................7

III.   TERMS OF SETTLEMENT ..............................................................................8

IV.   ARGUMENT ....................................................................................................10

    A.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved by the Court ....................................................................10

        1.    Applicable Legal Standard........................................................10

        2.    The Benefits Achieved by the Settlement.................................11

            a.    Disclosures Regarding Management's Financial Projections ........13

            b.    Disclosures Regarding the Sales Process Leading to the Merger.......................................................................................14

            c.    Disclosures Regarding Potential Conflicts of Interest .................16

            d.    Disclosures Regarding Citigroup's Financial Analyses ................17

        3.    Risk of Fraud or Collusion........................................................19

        4.    Complexity, Expense, and Likely Duration of Litigation.........................19

        5.    Amount of Discovery.................................................................20

        6.    Likelihood of Success................................................................22

        7.    Opinions of Plaintiffs' Counsel/Class Representatives..............................25

        8.    Reaction of Class Members .......................................................26

V.    THE CONDITIONALLY-CERTIFIED SETTLEMENT CLASS SHOULD BE CERTIFIED ....................................................................................................26

VI.    THE COURT SHOULD APPROVE THE FEE AND EXPENSE AMOUNT TO PLAINTIFFS' COUNSEL ................................................................................27

    A.    The Value of the Benefit Rendered to the Settlement Class...................................28

    B.    The Contingent Nature of the Fee.........................................................................29

    C.    Lodestar Analysis...................................................................................................30

    D.    The Complexity of the Litigation ........................................................................31

    E.    The Professional Skill and Standing of Plaintiffs' Counsel .................................32

VII.    CONCLUSION.......................................................................................................33

## TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*Adair v. Wozniak*,
    492 N.E.2d 426 (Ohio 1986)................................................................22

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................27

*Arnold v. Soc'y for Sav. Bancorp., Inc.*,
    650 A.2d 1270 (Del. 1994) ................................................................12

*Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 495539 (S.D. Ohio Feb. 21,
    2008),
    *aff'd sub nom.*, 320 Fed. Appx. 364 (6th Cir. 2009) ........................10, 19, 27, 28

*Bailey v. Great Lakes Canning, Inc.*,
    908 F.2d 38 (6th Cir. 1990) ..............................................................10

*Behrens v. Wometco Enter., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *affd*, 899 F.2d 21 (11th Cir. 1990) .............31

*Brent v. Midland Funding, LLC*,
    No. 3:11 CV 1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ..................19

*Bullock v. Adm'r of Estate of Kircher*,
    84 F.R.D. 1 (D.N.J. 1979)..................................................................20

*Chrysler Corp. v. Dann*,
    223 A.2d 384 (Del. 1966) .................................................................30

*Conley v. Sears, Roebuck & Co.*,
    222 B.R. 181 (D. Mass. 1998) ..........................................................31

*Continuum Capital v. Nolan*,
    No. 5687-VCL, 2011 Del. Ch. LEXIS 69 (Del. Ch. Feb. 3, 2011) .................29

*David P. Simonetti Rollover IRA v. Margolis*,
    C.A. No. 3694-VCN, 2008 WL 5048692 (Del. Ch. June 27, 2008)............13, 16

*Drage v. Procter & Gamble*,
    694 N.E.2d 479 (Ohio App. 1997)......................................................24

*Fournier v. PFS Invs., Inc.*,
    997 F. Supp. 828 (E.D. Mich. 1998).....................................................31

*Franklin Balance Sheet Inv. Fund v. Crowley*,
　　C.A. No. 888-VCP, 2007 WL 2495018 (Del. Ch. Aug. 30, 2007)....................................30

*Gilbert v. MPM Enters., Inc.*,
　　709 A.2d 663 (Del. Ch. 1997)...........................................................................................20

*Granada Inv's, Inc. v. DWG Corp.*,
　　962 F.2d 1203 (6th Cir. 1992) ...........................................................................................10

*Hanlon v. Chrysler Corp.*,
　　150 F.3d 1011 (9th Cir. 1998) ............................................................................................10

*Henkel v. Aschinger*,
　　962 N.E.2d 395 (Ohio Com. Pl. 2012) .........................................................................23, 24

*In re Atheros Commc'ns, Inc. S'holder Litig.*,
　　Consol. C.A. No. 6124-VCN, 2011 WL 864928  (Del. Ch. Mar. 4, 2011) .......................12

*In re Austrian & German Bank Holocaust Litig.*,
　　80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................................................19

*In re Beverly Hills Fire Litig.*,
　　639 F. Supp. 915 (E.D. Ky. 1986) ...................................................................................30

*In re Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, PA.*,
　　778 F.2d 890 (1st Cir. 1985).............................................................................................31

*In re Broadwing, Inc., ERISA Litig.*,
　　252 F.R.D. 369 (S.D. Ohio 2006) ...............................................................26, 28, 29, 30

*In re Celera Corp. S'holder Litig.*,
　　No. 6034-VCP, 2012 WL 1020471 (Del. Ch. Mar. 23, 2012),
　　*aff'd in part & rev'd in part*, 59 A.3d 418 (Del. 2012) .....................................................18

*In re Chips & Techs., Inc. S'holders Litig.*,
　　No. C.A. 15832, 1998 WL 409155 (Del. Ch. June 24, 1998) ...........................................15

*In re Countrywide Corp. S'holders Litig.*,
　　No. 3464-VCN, 2009 WL 2595739 (Del. Ch. Aug. 24, 2009)...........................................11

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
　　248 F.R.D. 483 (E.D. Mich. 2008) ...................................................................................32

*In re Dr. Pepper/Seven Up Cos. S'holders Litig.*,
　　No. 13109, 1996 WL 74214 (Del. Ch. Feb. 9, 1996), *aff'd*, 683 A.2d 58
　　(Del. 1996) .........................................................................................................................19

*In re Emerging Commc'ns, Inc. S'holder Litig.*,
   C.A. No. 16415, 2004 WL 1305745 (Del. Ch. May 3, 2004) ...........................................13

*In re Fine Host Corp. Secs. Litig*,
   No. MDL 1241, 2000 WL 33116538 (D. Conn. Nov. 8, 2000) .........................................31

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)...............................................................................31

*In re IXC Commc'ns S'holder Litig. v. Cincinnati Bell*,
   C.A. No. 17324, WL 1009174 (Del. Ch. Oct. 27, 1999) ..................................................24

*In re John Q. Hammons Hotels Inc. S'holder Litig.*,
   No. 758-CC, 2009 WL 3165613 (Del. Ch. Oct. 2, 2009) ..................................................16

*In re Keithley Instruments, Inc. Derivative Litig.*,
   599 F. Supp. 2d 908 (N.D. Ohio 2009)......................................................................11

*In re Metro. Life Derivative Litig.*,
   935 F. Supp. 286 (S.D.N.Y. 1996) ...........................................................................11

*In re Netsmart Technologies, Inc. Shareholders Litigation*,
   924 A.2d 171 (Del. Ch. 2007)............................................................................14, 21

*In re Plains Res. Inc. S'holders Litig.*,
   C.A. No. 071-N, 2005 WL 332811 (Del. Ch. Feb. 4, 2005)..............................................30

*In re PNB Holding Co. S'holders Litig.*,
   No. 28-N, 2006 WL 2403999 (Del. Ch. Aug. 18, 2006) ..................................................13

*In re Pure Res., Inc. S'holders Litig.*,
   808 A.2d 421 (Del. Ch. 2002)................................................................................18

*In re Staples, Inc. S'holders Litig.*,
   792 A.2d 934 (Del. Ch. 2001).......................................................................12, 13, 23

*In re Talley Indus., Inc. S'holders Litig.*,
   C.A. No. 15961, 1998 WL 191939 (Del. Ch. April 9, 1998) ...........................................21

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ..................................................................10, 20

*In re the Appraisal of Shell Oil Co.*,
   C.A. No. 8080, 1990 WL 201390 (Del. Ch. Dec. 11, 1990),
   *aff'd*, 607 A.2d 1213 (Del. 1992) ...........................................................................20

*In re The MONY Grp. Inc. S'holder Litig.*,
    852 A.2d 9 (Del. Ch. 2004)...............................................................................12

*In re Vitalink Commc'ns Corp. S'holders Litig.*,
    No. 12085, 1991 WL 238816 (Del. Ch. Nov. 8, 1991) ...................................30

*Kogan v. Aimco Fox Chase, L.P.*,
    193 F.R.D. 496 (E.D. Mich. 2000) ...............................................................3, 26

*Kugelman v. PVF Capital Corp.*,
    972 F. Supp. 2d 993 (S.D. Ohio 2013) ............................................................24

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
    11 A.3d 1175 (Del. Ch. 2010)..........................................................................13

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)..........................................................................................11

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y. 1984) ..................................................................20

*Monday v. Meyer*,
    No. 1:10 CV 1838, 2011 WL 5974664 (N.D. Ohio Nov. 29, 2011) ...........23, 24

*Nagy v. Bistricer*,
    770 A.2d 43 (Del. Ch. 2000)............................................................................15

*Pfeffer v. Redstone*,
    965 A.2d 676 (Del. 2009) ...........................................................................17, 25

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
    636 F.3d 235 (6th Cir. 2011) ...........................................................................11

*Radol v. Thomas*,
    772 F.2d 244 (6th Cir. 1985) ...........................................................................23

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974) .........................................................................28

*Rawlings v. Prudential-Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993) ..........................................................................27, 30

*Seinfeld v. Coker*,
    847 A.2d 330 (Del. Ch. 2000)..........................................................................30

*Shelnsky v. Dorsey*,
    574 F. 2d 131 (3rd Cir. 1978) ..........................................................................11

*Smith v. Ajax Magnethermic Corp.*,
    No. 4:02-CV-0980, 2007 WL 3355080 (N.D. Ohio Nov. 6, 2007)...................................25

*Stroud v. Grace*,
    606 A.2d 75 (Del. 1992) ...................................................................................................12

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976).........................................................................................................12

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ..........................................................................................22

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
    899 F. Supp. 1297 (D.N.J. 1995) ....................................................................................30

*Weston v. Weston Paper & Mfg. Co.*,
    658 N.E.2d 1058 (Ohio 1996).........................................................................................22

*White v. Morris*,
    811 F. Supp. 341 (S.D. Ohio 1992) ................................................................................19

## STATUTES, RULES & OTHER AUTHORITIES

Federal Rules of Civil Procedure
    Rule 23(e)........................................................................................................................10
    Rule 23.1 .........................................................................................................................10
    Rule 23.1(b)(3).................................................................................................................23

O.R.C. §1701.59(C)(1) ...........................................................................................................23

Ohio Rules of Civil Procedure
    Rule 23.1 .........................................................................................................................23

Shannon P. Pratt, *The Market Approach to Valuing Businesses* (2d ed. 2005)............................18

Plaintiffs Anne Cutler and Brent Berkman (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class, respectfully submit this Memorandum of Law in support of their Motion seeking: (i) final approval of the Settlement, pursuant to the Stipulation of Settlement filed February 11, 2016 (the "Stipulation" or "Stip.")[1]; (ii) final certification of the Settlement Class in connection with the proposed Settlement (the "Settlement") of the consolidated actions (the "Action"); and (iii) approval of an award of attorneys' fees and expenses.

## I.    INTRODUCTION

This is a shareholder class and derivative action brought on behalf of similarly situated public shareholders of Associated Estates Realty Corporation ("Associated Estates" or the "Company") and derivatively on behalf of nominal defendant Associated Estates against members of the Company's Board of Directors ("Board"), arising out of the sale of Associated Estates to BSREP II Aries Pooling LLC ("Brookfield") at $28.75 per share, announced on April 22, 2015, and completed on August 7, 2015 (the "Merger").  Through the  Action, Federal Plaintiffs alleged Defendants breached their fiduciary duties to Associated Estates and its shareholders by, among other things, attempting to obtain shareholder approval of the Merger through a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A ("Definitive Proxy") filed with the U.S. Securities and Exchange Commission ("SEC") on June 15, 2015.

As a direct result of Plaintiffs' successful prosecution of the Action, Associated Estates made supplemental disclosures to Associated Estates' shareholders disclosing information about

---

[1] Unless otherwise  herein defined, all capitalized terms used shall have the same meanings as set forth in the  Stipulation.  ECF No. 48-3.

the Merger in advance of the shareholder vote that was necessary for shareholders to make a fully informed decision on whether to vote in favor of the Merger ("Supplemental Disclosures").[2]  *See* Oddo Decl., ¶¶3-14. The Supplemental Disclosures provided additional material information to Associated Estates' shareholders concerning: the events, facts, and circumstances leading up to the Merger; the financial analyses performed by the Company's financial advisor, Citigroup Global Markets Inc. ("Citigroup"); the Company's financial projections; and Citigroup's potential conflicts of interest. *Id.*, ¶¶23-33.  The Supplemental Disclosures would not have been available to Associated Estates shareholders without this lawsuit.

The efforts of Plaintiffs and their counsel to achieve this Settlement included: devoting substantial time and resources to investigate and research public filings made by and stock analyst reports about Associated Estates and Brookfield; consulting with an expert in corporate disclosure and valuation; reviewing non-public documents produced by Associated Estates and its financial advisor in connection with the Merger; and pursuing aggressive litigation and discovery including depositions of Jeffrey I. Friedman, Associated Estates' Chief Executive Officer and Chairman of the Board, and Citigroup deal team member, Matthew Greenberger. Oddo Decl., ¶15.  As a result of these efforts, holders of the over 58 million Associated Estates common shares outstanding were able to make an informed decision about whether to vote in favor of or against the Merger.

---

[2] The terms of the Settlement and the benefits to the Settlement Class are described in the Declaration of Stephen J. Oddo in Support of Plaintiffs' Motion for (i) Final Approval of Settlement; (ii) Certification of Settlement Classes; and (iii) Approval of Request for Award of Attorneys' Fees and Expenses ("Oddo Decl."), filed herewith.

In light of the material benefits caused by Plaintiffs' efforts, the Settlement also provides for an award of attorneys' fees and expenses of no greater than $390,000 ("Fee and Expense Amount") for Plaintiffs' counsel, which Defendants do not oppose and have agreed to pay (or cause to be paid), subject to Court approval. Stip., ¶10. The Fee and Expense Amount reflects a negative multiplier of approximately 0.93 to the lodestar of $393,033.00, comprised of over 718.20 hours of work, not including $23,085.79 in expenses expended by Plaintiffs' counsel. Oddo Decl., ¶52.

On February 12, 2016, this Court preliminarily approved the Settlement, directed that notice be sent out to members of the Settlement Class, and scheduled a hearing on June 8, 2016 to consider the Settlement and any objections by Class Members, if any, prior to deciding whether to grant final approval to the Settlement. To date, there have been no objections to this Settlement, including the Fee and Expense Amount. Oddo Decl., ¶22; *see Kogan v. Aimco Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000) (finding "the fact that not one class member objected after receiving the best notice possible under the circumstances to weigh heavily in favor of approving the settlement agreement"). For the reasons stated herein, Plaintiffs respectfully move this Court to approve the Settlement, finally certify the Settlement Class, and approve the Fee and Expense Amount. Defendants do not oppose the foregoing relief.[3]

---

[3] This Memorandum of Law is submitted on behalf of Federal Plaintiffs and does not necessarily represent the views of Defendants as to each and every statement made herein.

## II.     STATEMENT OF FACTS

### A.     Procedural History

On June 3, 2014, real estate investment firm Land & Buildings ("L&B") sent a letter to Associated Estates announcing that it had acquired an ownership position in the Company's common stock and urged the Company to sell itself as the best way to "maximize shareholder value." Oddo Decl., ¶3.  On November 17, 2014, L&B announced an intention to nominate candidates for election to the Company's Board, replacing all seven existing directors. *Id.*  On March 12, 2015, L&B announced its intention to nominate candidates to replace not the full Board, but three specific directors.  *Id.*

On April 22, 2015, Associated Estates announced that it had entered into the Merger Agreement with Brookfield and, subject to a vote in favor of the Merger by two-thirds of the outstanding shares of Associated Estates stock, Brookfield would be merged into Associated Estates, with Associated Estates continuing as the surviving corporation. *Id.*, ¶4. Pursuant to the Merger Agreement, holders of Associated Estates common stock would receive $28.75 for each share of Associated Estates common stock owned immediately before the Merger.  *Id.*

After the Merger announcement, two putative class and shareholder derivative actions were commenced in this Court: *Cutler v. Friedman, et al.*, No. 1:15-cv-00857-DCN (filed April 30, 2015) and *Berkman v. Friedman, et al.*, 1:15-cv-00928 (filed May 12, 2015) (the "Federal Actions").  Each action named as Defendants the Company and the Board, and alleged, among other things, that the consideration to be paid to Associated Estates' shareholders was inadequate and that the Defendants breached or aided and abetted breaches of fiduciary duties in connection with the proposed Merger.  Oddo Decl., ¶¶5-6.  In addition, two putative class and shareholder derivative actions were filed in the Court of Common Pleas for Cuyahoga County, Ohio (the

- 4 -

"State Actions"): *Kesler v. Associated Estates Realty Corporation, et al.*, No. CV-15-845987 (filed May 21, 2015); and *Witkowski v. Associated Estates Realty Corporation, et al.*, No. CV-15-845978 (filed May 21, 2015). *Id.*, ¶7.

On June 1, 2015, Associated Estates filed with the SEC a preliminary proxy statement on Schedule 14A ("Preliminary Proxy Statement") relating to the Merger and the vote of Associated Estates shareholders on the Merger. *Id.*, ¶8.

On June 10, 2015, the Associated Estates Defendants filed Motions to Proceed in One Jurisdiction and Dismiss or Stay Litigation in Other Jurisdiction ("Motions to Proceed in One Jurisdiction") in the Federal Actions and the State Actions, requesting the courts to determine which forum should hear the dispute, order the shareholder representatives to pursue their claims in that forum, and dismiss or stay any cases pending in the other forum.  Oddo Decl., ¶9. Between June 11 and June 18, 2015, the Parties conferred telephonically about the Motions to Proceed in One Jurisdiction.  The plaintiffs in the State Actions agreed to stay the State Actions pending resolution of an anticipated motion for preliminary injunction by the Federal Plaintiffs. *Id.*

On June 13, 2015, Federal Plaintiffs' counsel served a letter requesting certain discovery items from Defendants. *Id.*, ¶10.  On June 15, 2015, Associated Estates filed with the SEC the Definitive Proxy Statement relating to the Merger. *Id.*

On June 23, 2015, an Amended Complaint was filed in the *Cutler* Action, repeating the claims of breach of fiduciary duty and aiding and abetting, and alleging that the Defendants made material misstatements and/or omissions in the Definitive Proxy Statement in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder. *Id.*, ¶11.  On July 2, 2015, the Court entered an Order, consolidating the *Cutler* and

*Berkman* actions and appointing Robbins Arroyo LLP and WeissLaw LLP as Co-Lead Counsel and Ciano & Goldwasser, LLP as Liaison Counsel (collectively, "Class Counsel").  *Id.*

### B.    Settlement Negotiations

After arm's-length negotiations as to the scope of discovery and filing a protective order governing the exchange of confidential information, the Defendants produced certain confidential, non-public documents related to the Merger.  *Id.*, ¶12.  On July 8, 2015, having analyzed, in conjunction with their expert in corporate disclosure and valuation, the documents and the public filings related to the Merger, and in response to an order from this Court requiring a settlement demand to be served no later than July 9, 2015, Class Counsel, on behalf of the plaintiffs in both the Federal and State Actions, sent a written settlement demand to the Defendants (the "Settlement Demand").  Oddo Decl., ¶12.  On July 13, 2015, the Defendants responded to the Settlement Demand.  *Id.*, ¶13.  Between July 14, 2015 and July 24, 2015, Class Counsel and Defendants' counsel continued arm's-length negotiations concerning possible resolution of the Action, including the negotiation of supplemental disclosures that the Federal Plaintiffs had identified and their counsel demanded the Defendants publicly file with the SEC in advance of the Associated Estates shareholders' special meeting to approve the Merger. *Id.*

After arm's-length negotiations, on July 24, 2015, counsel for the Parties reached an agreement in principle, set forth in a Memorandum of Understanding ("MOU"), providing for the settlement of the Action between and among the Federal Plaintiffs, on behalf of themselves and the putative Settlement Class and the Defendants.  *Id.*, ¶14.  Pursuant to the MOU, Defendants agreed to, and did, make the Supplemental Disclosures as reflected in a Current

Report on Form 8-K, filed by the Company with the SEC on July 24, 2015 (the "Form 8-K").
*Id.*[4]

Per the MOU, the Plaintiffs undertook additional confirmatory discovery to confirm the
fairness and reasonableness of the terms of the Settlement, including the depositions of
Associated Estates' Chief Executive Officer and Chairman of the Board, Jeffrey I. Friedman, and
Citigroup deal team member, Matthew Greenberger. *Id.*, ¶15.  On August 7, 2015, the Merger
was completed and all outstanding shares of common stock of Associated Estates were acquired
by a real estate fund managed by Parent for $28.75 per share in cash. *Id.*, ¶17.

### C.    Preliminary Approval and Notice to Shareholders

On February 9, 2016, the Parties executed the Stipulation and on February 11, 2016, the
Federal Plaintiffs filed an unopposed motion for preliminary approval of the Settlement.  ECF
No. 48.  On February 12, 2016, the Court entered the Order Preliminarily Approving Settlement
(the "Preliminary Approval Order").  ECF No. 50; Oddo Decl., ¶18.  In accordance with the
Preliminary Approval Order, the Notice was mailed to each of the Class Members,[5] advising

---

[4] On August 4, 2015, in accordance with the terms of the MOU, the State Plaintiffs filed
notices of voluntary dismissal with prejudice in the State Actions. Oddo Decl., ¶16.  On August 5,
2015, the Associated Estates shareholders voted to approve the Merger. *Id*., ¶17.  On August 6,
2015, the State Court dismissed the State Actions with Prejudice. *Id.*, ¶16.

[5] This Court preliminarily certified a non-opt-out class pursuant to Rule 23(a), (b)(1), and (b)(2)
of the Federal Rules of Civil Procedure ("FRCP"), consisting of all record and beneficial holders
of Associated Estates common stock (including the State Plaintiffs), their respective successors
in interest, successors, predecessors in interest, predecessors, representatives, trustees,
executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or
entity acting for or on behalf of, or claiming under, any of them, and each of them, together with
their predecessors and successors and assigns, who held Associated Estates common stock at any
time between and including June 3, 2014 and August 7, 2015 (the effective date of the Merger),
but excluding the Defendants, their subsidiaries or other affiliates, their assigns, members of their
immediate families, officers of Associated Estates, and the legal representatives, heirs,

them of the terms of the Settlement. *Id.*, ¶21. The Notice contained clear instructions on how to file an objection with the Court if any Class Member objected to any aspect of the Settlement. *Id.* To date, no objections to any aspect of the Settlement have been received. *Id.*, ¶22.[6]

## III.    TERMS OF SETTLEMENT

As a direct result of the prosecution and settlement of the Action, Associated Estates made the Supplemental Disclosures in a Form 8-K filed with the SEC on July 24, 2015. Defendants expressly acknowledge the prosecution of the Action and negotiations with Federal Plaintiffs' counsel were the primary cause of their decision to make the Supplemental Disclosures.[7] Specifically, the Supplemental Disclosures provided the following additional information:

- that L&B was considering, in addition to the possibility of a sale of the Company, a board or management refresh with an improvement in capital allocation through asset sales and the buying back of stock;

- that on September 9, 2014, following the August 14, 2014 disclosure of L&B's 1.2% stake in the Company, Defendant Friedman, along with Company management employees Lou Fatica and Jeremy Goldberg, met with members of L&B in New York City as a response to L&B's request for a meeting to discuss the possibility of the Company's sale or other strategic alternatives;

- that on December 3, 2014, the Board met with representatives from Citigroup, and did engage the firm to act as the Company's financial advisor with respect to L&B's recent overtures;

- that the Company Board was unable to settle the matter with L&B after a

---

successors, or assigns of any such excluded person (the "Settlement Class" or "Class Members"). Preliminary Approval Order, ¶2.

[6] Pursuant to the Court's Preliminary Approval Order, the deadline for filing objections to the Settlement is May 18, 2016. *See* Preliminary Approval Order, ¶10. If any shareholder objections are received, Plaintiffs will respond to those objections by no later than June 1, 2016.

[7] *See* Stipulation, ¶FF.

meeting on December 10, 2014;

- that on December 28, 2014, the Board met with representatives from Jones Day, and did engage the firm to act as the Company's legal advisor with respect to L&B's recent overtures;

- further information regarding what issues Citigroup discussed with the Board on January 27, 2015, including preliminary financial and stock market information concerning the Company;

- that the Board was unable to settle the matter with L&B after a meeting on February 8, 2015;

- further information on the composition and nature of the seven parties that Citigroup was instructed to contact by the Board during the sales process;

- that representatives from L&B made contact with the Company's proxy solicitor on April 1, 2015;

- further information regarding the Board's decision that Party G was not likely to possess serious interest in an acquisition of the Company in a manner and on terms acceptable to the Board;

- with regards to Citigroup's *Selected Precedent Transactions Analysis*, that the publicly available Wall Street research analyst consensus estimates of the net asset value per share of Associated Estates as of April 20, 2015 was $24.97 per share;

- further information regarding Citigroup's prior service history with Associated Estates, including aggregate fees paid by Associated Estates to Citigroup within the last two years totaling approximately $1.2 million, as well as further information regarding Citigroup's prior service history for Brookfield and its parent entity within the last two years, totaling approximately $35 million; and

- with regard to financial projections of the Company, that the projections for the 2015 fiscal year were based on the Company's actual first quarter results and the following second through fourth quarter estimates by senior management: NOI of $95.6 million, EBITDA of $84.3 million, and Unlevered Free Cash Flow of ($44.8) million.

## IV.     ARGUMENT

### A.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved by the Court

#### 1.     Applicable Legal Standard

Courts favor settlement over continued litigation, particularly in complex cases such as this. *See Granada Inv's, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Settlements are welcome in [shareholder derivative actions] because litigation is 'notoriously difficult and unpredictable' … [a]bsent evidence of fraud or collusion, such settlements are not to be trifled with.");[8] *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 495539, at *1 (S.D. Ohio Feb. 21, 2008), *aff'd sub nom.*, 320 Fed. Appx. 364 (6th Cir. 2009) (evaluating proposed settlement of class action "in light of the general federal policy favoring the settlement of class actions") (citation omitted).  However, a class action and derivative may not be dismissed, compromised, or settled without the Court's approval.  *See* FRCP 23(e), 23.1.

The determination of whether a proposed settlement is "fair, adequate, and reasonable" and thereby satisfies FRCP 23(e) and 23.1 is committed to the Court's sound discretion.  *See Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990); *see also In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1018 (S.D. Ohio 2001) ("'settlement is the offspring of compromise; the question [a court addresses] is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).  Among the factors that courts consider in connection with approval of a class action settlement are: "(1) the risk of fraud or collusion; (2)

---

[8] Here, as throughout, all emphasis is deemed added and citations and footnotes are deemed omitted unless otherwise noted.

- 10 -

the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."[9] *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011).  Here, each factor demonstrates that the Settlement is fair, adequate, and reasonable and should be approved.

## 2.        The Benefits Achieved by the Settlement

Courts have long recognized that non-monetary benefits provide substantial benefits, and settlements based on such benefits warrant approval.  *See, e.g.*, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) (noting that "a corporation may receive a 'substantial benefit' from a derivative suit, … regardless of whether the benefit is pecuniary in nature"); *In re Countrywide Corp. S'holders Litig.*, No. 3464-VCN, 2009 WL 2595739, at *3 (Del. Ch. Aug. 24, 2009) (holding that "it is not the case that a settlement must include a monetary element in order to pass muster as fair and reasonable.").[10]

---

[9] The standard to approve a class action and derivative settlement is the same. *See, e.g.*, *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 291 (S.D.N.Y. 1996) ("The standards to be applied in determining whether to approve the proposed settlement of a class action or derivative suit … is whether the compromise is fair, reasonable and adequate."); *Shelnsky v. Dorsey*, 574 F. 2d 131, 147 (3rd Cir. 1978) ("[T]he standards … for class suit settlements have accordingly been applied, although perhaps with somewhat less rigor, in the settlement of shareholders' derivative suits.").

[10] Ohio courts often refer to Delaware law on corporate matters in the absence of Ohio law on point. *In re Keithley Instruments, Inc. Derivative Litig.*, 599 F. Supp. 2d 908, 918, n. 6 (N.D. Ohio 2009) ("Both parties repeatedly reference cases dealing with Delaware law in their briefs. Accordingly, the Court refers often to  such authorities, and, unless distinguished, treats those cases as highly persuasive.").

Here, the Settlement secured the disclosure of additional material information disseminated to Associated Estates' shareholders in the Definitive Proxy prior to the shareholders' special meeting to approve the Merger. Federal Plaintiffs' counsel believe that the Supplemental Disclosures provided meaningful benefits to Associated Estates shareholders because, without complete disclosure of this information, the Company's shareholders could not make an informed decision on whether to vote in favor of (or against) the Merger. Shareholders are entitled to be fully informed of all material facts concerning transactions requiring their approval. *See, e.g.*, *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992) (noting the "well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action"); *Arnold v. Soc'y for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (same).[11]

Moreover, once directors take it upon themselves to disclose information, that information must not be misleading, and directors are obligated to provide shareholders with an accurate, full, and fair characterization of events once they travel down the road of a "partial disclosure." *In re The MONY Grp. Inc. S'holder Litig.*, 852 A.2d 9, 24-25 (Del. Ch. 2004); *see also In re Atheros Commc'ns, Inc. S'holder Litig.*, Consol. C.A. No. 6124-VCN, 2011 WL 864928, at *8 (Del. Ch. Mar. 4, 2011); *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 954 (Del. Ch. 2001) ("directors must also avoid partial disclosures that create a materially misleading impression"). As detailed herein, the Supplemental Disclosures provided Associated Estates

---

[11] An omitted fact is considered material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.... It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused a reasonable investor to change his vote." *Arnold*, 650 A.2d at 1277 (citing *TSC Indus. v. Northway, Inc*., 426 U.S. 438, 449 (1976)).

shareholders with material information relating to the fairness of the Merger and determining how to vote.

<b>a.     Disclosures Regarding Management's Financial Projections</b>

The Supplemental Disclosures provided detail and context concerning management's financial projections for fiscal years 2015 through 2019, as used by Citigroup in conjunction with its financial analyses.  The Supplemental Disclosures revealed that the projections for the 2015 fiscal year were based on the Company's actual first quarter results and the following second through fourth quarter estimates by senior management: NOI of $95.6 million, EBITDA of $84.3 million, and Unlevered Free Cash Flow of ($44.8) million.  Oddo Decl., ¶26.

Courts hold that management's financial projections are among the most important information a shareholder can have when evaluating the proposed consideration in a merger. *See, e.g.*, *Staples*, 792 A.2d at 958 n.44 ("One suspects that projections are the information that most stockholders would find the most useful to them."); *David P. Simonetti Rollover IRA v. Margolis*, C.A. No. 3694-VCN, 2008 WL 5048692, at *10 (Del. Ch. June 27, 2008) ("Delaware law places a premium on management's predictions of future performance.").[12]  The importance of complete and accurate disclosure of management's financial projections is magnified where, as here, shareholders must determine whether to approve an all-cash transaction or whether to

---

[12] *See also Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010) ("management's best estimate of the future cash flow of a corporation that is proposed to be sold in a cash merger is clearly material information" that shareholders ought to have when deciding whether it is in their best interest to accept the proposed merger price); *In re PNB Holding Co. S'holders Litig.*, No. 28-N, 2006 WL 2403999, at *15 (Del. Ch. Aug. 18, 2006) (holding that "reliable management projections of the company's future prospects are of obvious materiality to the electorate"); *In re Emerging Commc'ns, Inc. S'holder Litig.*, C.A. No. 16415, 2004 WL 1305745, at *37 (Del. Ch. May 3, 2004) (projections are "highly material" because knowledge of projections "would have enabled the shareholders to understand [the company's] intrinsic worth and the extent of the market's undervaluation of their company").

seek appraisal for their shares based heavily on management's expectations of the company's growth and earnings potential.  Absent the disclosure of this information, the Company's shareholders would not have been able to reliably assess the credibility of the financial analyses conducted by Citigroup and, thus, would not have been able to determine whether the Merger is fair and in their best interests.  Given that courts have repeatedly found these types of financial projections to be "among the most highly-prized disclosures by investors," *In re Netsmart Technologies, Inc. Shareholders Litigation*, 924 A.2d 171, 203 (Del. Ch. 2007), the disclosure of these projections provided a substantial benefit to the Settlement Class and weighs strongly in favor of approving the Settlement.

      **b.**      **Disclosures Regarding the Sales Process Leading to the Merger**

The Supplemental Disclosures provided the Company's shareholders with material disclosures concerning the circumstances, events, and sales process leading up to the entry into the Merger and the recommendation to Associated Estates' shareholders that they cast their votes in favor of the Merger.  These disclosures included material information concerning: (i) that L&B was considering, in addition to the possibility of a sale of the Company, a board or management refresh with an improvement in capital allocation through asset sales and the buying back of stock; (ii) that on September 9, 2014, following the August 14, 2014 disclosure of L&B's 1.2% stake in the Company, Defendant Friedman, along with Company management employees Lou Fatica and Jeremy Goldberg, met with members of L&B in New York City as a response to L&B's request for a meeting to discuss the possibility of the Company's sale or other strategic alternatives; (iii) that on December 3, 2014, the Company Board met with representatives from Citigroup, and did engage the firm to act as the Company's financial advisor with respect to L&B's recent overtures; (iv) that the Company Board was unable to settle the

matter with L&B after a meeting on December 10, 2014; (v) that on December 28, 2014, the Company Board met with representatives from Jones Day, and did engage the firm to act as the Company's legal advisor with respect to L&B's recent overtures; (vi) further information regarding what issues Citigroup discussed with the Board on January 27, 2015, including preliminary financial and stock market information concerning the Company; (vii) that the Company Board was unable to settle the matter with L&B after a meeting on February 8, 2015; (viii) further information on the composition and nature of the seven parties that Citigroup was instructed to contact by the Board during the sales process; (ix) that representatives from L&B made contact with the Company's proxy solicitor on April 1, 2015; and (x) further information regarding the Board's decision that Party G was not likely to possess serious interest in an acquisition of the Company in a manner and on terms acceptable to the Board.  Oddo Decl., ¶28.

As courts have held, shareholders are entitled to an accurate description of the "process" directors used "in coming to their decision to support the Merger."  *See Nagy v. Bistricer*, 770 A.2d 43, 60 (Del. Ch. 2000). The Court in *Nagy* further held that "[i]nformation of this kind is self-evidently material to [a shareholder's] decision whether to accept the merger consideration or to seek appraisal."  *Id.*  Here, without this omitted information, Associated Estates' shareholders would have been misled about and/or unable to assess: (i) the effectiveness of the Board to orchestrate a robust and fair sales process, designed to achieve the best value reasonably available under the circumstances for the Company's shareholders; and/or (ii) the extent the Board failed to adequately discharge its duty to act in the best interests of Associated Estates' shareholders. *See, e.g.*, *In re Chips & Techs., Inc. S'holders Litig.*, No. C.A. 15832, 1998 WL 409155, at *2 (Del. Ch. June 24, 1998) ("The supplemental disclosure document … contains a substantially expanded section titled "Background of the Offer: Reasons for the

Recommendation," … While it is unnecessary to decide the materiality as a matter of law of the additional information contained in [the disclosure document], I note that the disclosures there made are both substantial and helpful to an understanding of the decision to authorize the transaction with [the buyer] and to recommend it to the stockholders.").

<strong>c.      Disclosures Regarding Potential Conflicts of Interest</strong>

The Supplemental Disclosures also included details regarding Associated Estates previous business history with Citigroup as well as Brookfield's previous business history with Citigroup.    Particularly, the Supplemental Disclosures disclosed information regarding Citigroup's prior service history with Associated Estates, including aggregate fees paid by Associated Estates to Citigroup within the last two years totaling approximately $1.2 million. Oddo Decl., ¶30.    Furthermore, the Supplemental Disclosures provided Associated Estates shareholders with information regarding Citigroup's prior service history for Brookfield and its parent entity within the last two years, including aggregate fees paid by Brookfield and/or its parent entity to Citigroup within the last two years totaling approximately $35 million. *Id.*

Courts have "stressed the importance of disclosure of potential conflicts of interest of financial advisors." *In re John Q. Hammons Hotels Inc. S'holder Litig.*, No. 758-CC, 2009 WL 3165613, at *16 (Del. Ch. Oct. 2, 2009).  Because "[t]he financial advisor's opinion of financial fairness for a proposed transaction is one of the most important process-based underpinnings of a board's recommendation of a transaction to its stockholders ... it is imperative for the stockholders to be able to understand what factors might influence the financial advisor's analytical efforts." *Simonetti*, 2008 WL 5048692, at *8.  Known facts regarding an advisor's potential conflicts of interest must be disclosed regardless of whether there is actual adverse impact on the financial advisor's work in the transaction.  *See Hammons Hotels*, 2009 WL

- 16 -

3165613, at *16 ("There is no rule, however, that conflicts of interest must be disclosed only where there is evidence that the financial advisor's opinion was actually affected by the conflict.").

The Supplemental Disclosures made clear for the first time that Citigroup might have a potential conflict with both Associated Estates and Brookfield, which could affect the weight and credibility Associated Estates shareholders placed on Citigroup's fairness opinion and underlying financial analyses when determining whether to vote in favor of the Merger.  This information is material because it informs shareholders of potential conflicts with the financial advisor rendering the fairness opinion and influencing the transaction.  These are material facts because "'there is a substantial likelihood that a reasonable person would consider [them] important in deciding how to vote.'"  *Pfeffer v. Redstone*, 965 A.2d 676, 684 (Del. 2009) (alteration in original).

### d.    Disclosures Regarding Citigroup's Financial Analyses

As the Company's financial advisor in connection with the Merger, Citigroup performed various financial analyses in reaching its fairness opinion regarding the Merger.  However, Plaintiffs alleged the Proxy failed to disclose material assumptions and inputs underlying the valuation analyses performed by Citigroup.  *See* Amended Complaint, ¶57 (ECF No. 27).  As a result of Plaintiffs' efforts, Associated Estates shareholders were provided with previously undisclosed, material information concerning Citigroup's financial analyses conducted in support of its fairness opinion regarding the Merger.  Specifically, with respect to Citigroup's *Selected*

*Precedent Transactions Analysis*,[13] Associated Estates shareholders were provided with the publicly available Wall Street research analyst consensus estimates of the net asset value per share of Associated Estates as of April 20, 2015, was $24.97 per share.  Oddo Decl., ¶32.

Courts have held that the multiples underlying a banker's comparable companies analysis and precedent transactions analysis are material information.[14]  "The real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttress that result."  *In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002).  Here, because the variables formed the basis of Citigroup's *Selected Precedent Transactions Analysis*, and the Board's recommendation to shareholders that the Merger is financially fair, they constitute information highly material to shareholders.  Thus, the previously-omitted information relating to Citigroup's analyses was material to Associated Estates shareholders because it enabled them to determine if Citigroup's analyses and methodology were reasonable.  *See Pure Res.*, 808 A.2d at 449 ("[S]hareholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on

---

[13] A precedent transactions analysis is a market approach to valuation and one of the three primary valuation analyses typically performed by financial advisors.  "The basic principles of the transaction method are the same as for the guideline publicly traded company method. The differences in implementation are a result of the differences in data available and, in some cases, the structure of the transactions."  Shannon P. Pratt, *The Market Approach to Valuing Businesses*, xxxv (2d ed. 2005).

[14] *See, e.g.*, Transcript of Record at 43:8-11, 13-15, *Turberg v. ArcSight*, C.A. No. 5821-VCL (Del. Ch. Sept. 28, 2011) ("[I]f you were to consider what really constitutes a fair summary, then the background multiples should be on there, just like they're in there when you give them to the board ....  [Y]ou would never see a board book that would go to the board without the background multiples.") (Oddo Decl., Ex. 6); *In re Celera Corp. S'holder Litig.*, No. 6034-VCP, 2012 WL 1020471, at *32 (Del. Ch. Mar. 23, 2012) ("[A] fair summary of a comparable companies or transactions analysis probably should disclose the market multiples derived for the comparable companies or transactions."), *aff'd in part & rev'd in part*, 59 A.3d 418 (Del. 2012).

a merger or tender rely."). This type of disclosure is sufficient to support approval of the Settlement. *See In re Dr. Pepper/Seven Up Cos. S'holders Litig.*, No. 13109, 1996 WL 74214, at *4 (Del. Ch. Feb. 9, 1996) (comparable companies analysis disclosures provided "shareholders with additional information that might have been material," and thus supported approval of a settlement), *aff'd*, 683 A.2d 58 (Del. 1996).

### 3.    Risk of Fraud or Collusion

Courts generally "'respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered.'" *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011). Settlements that are the product of arm's-length negotiations are generally viewed as antithetical to collusion. Indeed, courts in this Circuit have held that "the primary test of collusion is whether the proposed settlement itself is fair, adequate, and reasonable." *Bailey*, 2008 WL 495539, at *4 (citing *White v. Morris*, 811 F. Supp. 341, 343 (S.D. Ohio 1992)).

Here, there is no evidence of collusion between the parties or their counsel. Plaintiffs' counsel have confirmed that agreement on the material terms of the Settlement were the result of strenuous, hard-fought and arm's length negotiations. Oddo Decl., ¶42. Based on the foregoing, consideration of this factor supports approval of the Settlement.

### 4.    Complexity, Expense, and Likely Duration of Litigation

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent*, 2011 WL 3862363, at *16 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). As a result, "'[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Brent*, 2011

WL 3862363, at *16 (alteration in original). Accordingly, courts have consistently held that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement.'" *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 10-11 (D.N.J. 1979) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

These considerations are applicable here. Valuation issues (such as those challenged in the Amended Complaint) frequently become a battle of experts and courts are often skeptical regarding competing expert testimony. *See, e.g.*, *Gilbert v. MPM Enters., Inc.*, 709 A.2d 663, 673 (Del. Ch. 1997); *In re the Appraisal of Shell Oil Co.*, C.A. No. 8080, 1990 WL 201390 (Del. Ch. Dec. 11, 1990), *aff'd*, 607 A.2d 1213 (Del. 1992). The Action present such complex issues, which after trial, would likely be followed by an appeal. Consequently, significant legal and financial resources would be expended in that effort. The Settlement obviates the need to litigate these issues and the concomitant expense. Thus, this factor favors approval of the Settlement.

### 5.    Amount of Discovery

This consideration seeks to gauge whether counsel had access to sufficient information to evaluate the strength and weakness of their claims and to assess the adequacy of the settlement proposal. *See Telectronics*, 137 F. Supp. 2d at 1015. Here, despite the fact that the Settlement was reached before Defendants filed an answer, discovery took place on an accelerated and comprehensive basis, largely owing to the very nature of merger-related litigation. Defendants produced, and Plaintiffs' counsel reviewed, non-public documents, and informally obtained other information from Defendants' counsel. Plaintiffs' counsel also took the depositions of the key

people with knowledge of the Merger.  Plaintiffs' counsel also reviewed all this information with its expert both to determine the adequacy of the disclosures, as well as the viability of any post-Merger trial on an economic damages theory.  Based upon this review and investigation, Plaintiffs' counsel gained an adequate appreciation of the merits of the claims asserted and determined that the optimal result for the shareholders was for the Company to make the Supplemental Disclosures, enabling shareholders to make an intelligent, fully informed decision regarding the Merger.

Accordingly, based on their investigation, discovery efforts and analysis of applicable legal principles, Plaintiffs and their counsel concluded that the Supplemental Disclosures provided ample consideration for the settlement of this Action, given the totality of the claims asserted, the defenses thereto, and the substantial risks, costs and uncertainties of protracted litigation.  By giving the Company's shareholders the opportunity to consider the additional information in determining whether to vote their shares in favor of the transaction, the Settlement provided the Settlement Class with a significant benefit and all that was reasonably available under the facts and circumstances of the Action.  *See Netsmart*, 924 A.2d at 207 (noting the Court's preference for supplemental disclosure that provide shareholders with full information in advance of the vote because such a remedy "gives stockholders the choice to think for themselves on full information, thereby vindicating their rights as stockholders to make important voting and remedial decisions based on their own economic self-interest"); *see also In re Talley Indus., Inc. S'holders Litig.*, C.A. No. 15961, 1998 WL 191939, at *15 (Del. Ch. April 9, 1998) ("Indeed, the timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely

- 21 -

manner to inform stockholders' decision making process"). Consideration of this factor likewise supports final approval of the Settlement.

### 6. Likelihood of Success

Like other factors, this one seeks to measure whether a settlement is reasonable in light of known or perceived risks. *See, e.g.*, *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (although a court is not required to "decide the merits of the case or resolve unsettled legal questions," it cannot "judge the fairness of a proposed compromise" without "weighing the Plaintiffs' likelihood of success on the merits against the amount and form of the relief offered in the settlement"). While Federal Plaintiffs believe their claims have substantial merit, they faced risks in establishing Defendants' liability.

For example, Federal Plaintiffs faced a high hurdle in establishing their direct claims for breach of fiduciary duty. Although Federal Plaintiffs would allege that Defendants harmed the Company's shareholders by failing to disclose all material information in connection with the shareholder vote and prevented Federal Plaintiffs and the Company's shareholders from being able to exercise their individual rights of corporate suffrage under Ohio law, a "shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed toward the corporation." *Adair v. Wozniak*, 492 N.E.2d 426, 429 (Ohio 1986). As the Ohio Supreme Court has held, a minority shareholder's claim must be brought derivatively if his claim is based upon an alleged injury that was suffered by "all other shareholders alike." *Weston v. Weston Paper & Mfg. Co.*, 658 N.E.2d 1058, 1060 (Ohio 1996) (finding that minority shareholders' claims had to be brought derivatively because "[i]f any injuries occurred, they occurred to all the other shareholders alike.").

- 22 -

Even if the Court were to find that Federal Plaintiffs have standing to bring direct claims for breach of fiduciary duty, Federal Plaintiffs' success on the merits was not assured.  If the Action continued, Defendants would argue they exercised valid "business judgment." "Ohio courts adhere to the 'business judgment rule," and will not inquire into the wisdom of actions taken by the directors in the absence of fraud, bad faith or abuse of discretion."  *Radol v. Thomas*, 772 F.2d 244, 256 (6th Cir. 1985).  Ohio gives great deference to the business judgment of corporate directors, and provides a statutory presumption that directors "act independently, in good faith, and having in mind the best interests of the corporation." *Henkel v. Aschinger*, 962 N.E.2d 395, 405 (Ohio Com. Pl. 2012) (citing O.R.C. §1701.59(C)(1)).  Overcoming the presumption of the business judgment rule requires "clear and convincing evidence that the director has not acted in good faith." O.R.C. §1701.59(C)(1); *see also Monday v. Meyer*, No. 1:10 CV 1838, 2011 WL 5974664, at *5 (N.D. Ohio Nov. 29, 2011).[15]

Federal Plaintiffs' derivative claims likewise faced challenges at the pleading stage because under FRCP, a derivative complaint must "state with particularity: any effort by the plaintiff to obtain the desired action from the directors or comparable authority, and, if necessary, from the shareholders or members; and the reasons for not obtaining the action or not making the effort."  FRCP 23.1(b)(3); *see also* Ohio R. Civ. P. 23.1.  As a result, shareholders do

---

[15] Moreover, had Defendants not caused the Company to issue the additional information, a palpable risk existed that the Court would have enjoined the consummation of the Merger.  *See Staples*, 792 A.2d at 956-58 (granting an injunction for disclosures which misleadingly described the method by which the valuation range for comparable companies were set forth, mis-description of a precedent transaction analysis and an inaccurate description of the discounted cash flow valuation).  Enjoining a transaction always presents the possibility that the buyer could walk away, thus denying shareholders the opportunity to decide for themselves whether or not to vote in favor of a transaction.  Securing this highly material information for the stockholders of Associated Estates conferred upon them a substantial benefit and did so without the "deal risk" that enjoining the Merger might have presented.

- 23 -

not have standing to bring a suit on behalf of the company "unless the board refuses to do so and that refusal is wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias on the part of the directors." *Monday*, 2011 WL 5974664, at *3 (quoting *Drage v. Procter & Gamble*, 694 N.E.2d 479, 482 (Ohio App. 1997).  Ohio law provides a limited exception to the demand requirement when the shareholder demonstrates that demand would be futile.  *Id*.  However, "establishing demand futility under Ohio law 'is not an easy task.'" *Henkel*, 962 N.E.2d at 405.  To demonstrate futility, a plaintiff bears the heavy burden of pleading with particularity that "the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed." *Monday*, 2011 WL 5974664, at *4.

Federal Plaintiffs also faced obstacles in establishing certain of their discrete claims.  For example, Ohio law provides that a proxy need only convey material information.  *See Henkel*, 962 N.E.2d at 406.  Plaintiffs must identify specific statements rendered misleading by allegedly omitted information.  *See Kugelman v. PVF Capital Corp*., 972 F. Supp. 2d 993, 997 (S.D. Ohio 2013).  Although Plaintiffs alleged that Citigroup's financial analyses omitted material facts, under Ohio law, shareholders need not "be given all the financial data they would need if they were making an independent determination of fair value in the first instance."  *Henkel*, 962 N.E.2d at 406. Plaintiffs' claims regarding the sales process undertaken by Defendants similarly faced a high bar.  "[M]anagement is ordinarily not obligated to discuss the panoply of possible alternatives to a course of action it is proposing."  *Id*.  Moreover, absent a showing of disloyalty or lack of care in agreeing to the preclusive deal measures such as those alleged here, such provisions "are reviewable as business judgments and are, thus, granted deference."  *In re IXC Commc'ns S'holder Litig. v. Cincinnati Bell*, C.A. No. 17324, WL 1009174, at *10 (Del. Ch. Oct. 27, 1999).

- 24 -

Despite such risks, the Settlement provided the Company's shareholders with a large portion of the relief sought by providing significant material information that enhanced each shareholders ability to make a fully-informed decision on the Merger.  With a fully-informed vote achieved, further litigation over monetary damages likely would not have succeeded.  *See Pfeffer*, 965 A.2d at 684 n.17 ("in the absence of coercion or disclosure violations, the adequacy of the price in a voluntary tender offer cannot be an issue").  A balancing of these considerations supports approval of the Settlement.  Federal Plaintiffs' counsel weighed the expense, length, and uncertainty of continued litigation and the likelihood of obtaining a better result after continued litigation.  Based on their evaluation, Federal Plaintiffs' counsel determined the proposed Settlement provides the Settlement Class with substantial benefits addressing the claims and relief sought in the Action and therefore is in the best interests of the Settlement Class.

### 7.      Opinions of Plaintiffs' Counsel/Class Representatives

Courts in this Circuit have given great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of the settlement.  *See, e.g.*, *Smith v. Ajax Magnethermic Corp.*, No. 4:02-CV-0980, 2007 WL 3355080, at *5 (N.D.  Ohio Nov. 6, 2007) ("The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'").  Although this Court should exercise its own discretion in determining whether the Settlement is "fair, reasonable and adequate," the Court has already noted the experience and qualifications of Federal Plaintiffs' counsel in its July 2, 2015 Order Appointing Lead and Liaison Counsel.  Based on their experience, investigation, and analysis specific to the Action, Federal Plaintiffs' counsel are convinced that the Settlement is fair, reasonable, and adequate. *See* Oddo Decl., ¶48.  Accordingly, this factor also supports final approval of the Settlement.

### 8.    Reaction of Class Members

Despite the providing of notice of the Settlement to Class Members in accordance with the Preliminary Approval Order, not a single objection to any aspect of the Settlement has been received as of the date of filing.[16]  This factor supports approval of the Settlement.  *See also In re Broadwing, Inc., ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) (noting that a "small number of objectors is a good indication of the fairness of the settlement.");  *Aimco Fox Chase*, 193 F.R.D. at 502 (finding "the fact that not one class member objected after receiving the best notice possible under the circumstances to weigh heavily in favor of approving the settlement agreement").[17]

Based on the foregoing evaluation, the Court should find that the Settlement is fair, reasonable, and adequate and should receive the Court's final approval.

## V.    THE CONDITIONALLY-CERTIFIED SETTLEMENT CLASS SHOULD BE CERTIFIED

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiffs requested that the Court preliminarily certify the Settlement Class so that Notice of the proposed Settlement could be issued.  *See* ECF No. 48-1.  In its Preliminary Approval Order, this Court preliminarily certified the Settlement Class.  *See* Preliminary Approval Order, ¶2.  Since the entry of the Preliminary Approval Order on February 12, 2016, nothing has occurred that would indicate the Settlement Class does not meet the requirements of FRCP 23(a), (b)(1), and/or (b)(2), and, for all the reasons stated in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Entry of Accompanying Order

---

[16] Pursuant to the Preliminary Approval Order, the objection deadline is May 18, 2016.

[17] The resolution of this complex and likely lengthy and protracted litigation benefits the public interest, as the additional disclosures allowed the passage of the Merger Agreement without significant delay to the companies involved.

for Notice and Scheduling of Hearing on Settlement (ECF No. 48-1), incorporated herein by reference, Federal Plaintiffs now request that the Court grant final certification of the Settlement Class.[18]

## VI. THE COURT SHOULD APPROVE THE FEE AND EXPENSE AMOUNT TO PLAINTIFFS' COUNSEL

Pursuant to the Stipulation, Defendants agreed not to oppose an application by Plaintiffs for attorneys' fees and expenses in an amount not to exceed $390,000. This amount is separate from the benefit already conferred on the Settlement Class in the form of the Supplemental Disclosures in the Form 8-K, does not impact the Settlement Class in any way and was negotiated at arm's-length with Defendants after an agreement was reached by the Parties concerning all other terms.

FRCP 23(h) authorizes the Court to "award reasonable attorney's fees and nontaxable costs ... by the parties' agreement." One aspect of the responsibility afforded to the Court by this subsection is to ensure "that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Indeed, "[n]egotiated and agreed-upon attorneys' fees as part of a class-action settlement are encouraged as an 'ideal' toward which the parties should strive." *Bailey*, 2008 WL 495539, at *3. "[C]ourts are especially amenable to awarding negotiated attorneys' fees and expenses in a reasonable amount where that amount is in addition to and separate from the defendant's

---

[18] In certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Nonetheless, all other prerequisites for class certification are met here.

settlement with the class … [and] fees negotiated and paid separate and apart from the class recovery are entitled to a presumption of reasonableness." *Id.*, at *1.

Here, the substantial benefit, in the form of the additional information contained in the Form 8-K, was provided to the Associated Estates shareholders prior to the shareholder vote on the Merger. *See, e.g.*, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (in actions where "'it may be impossible to assign monetary value to the benefit ... the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders'"). As such, the Fee and Expense Amount should be evaluated pursuant to six factors used by courts in the Sixth Circuit to determine whether the requested fee is "reasonable under the circumstances." These factors are: "(1) the value of the benefit rendered to the corporation or its stockholders, (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved on both sides." *Ramey*, 508 F.2d at 1196; *see In re Broadwing*, 252 F.R.D. at 381 (same).

**A.** **The Value of the Benefit Rendered to the Settlement Class**

As detailed above, the Settlement also conferred substantial benefits on the Settlement Class in the form of additional material disclosures made in the Form 8-K provided to the Company's shareholders in advance of the vote on the Merger. These Supplemental Disclosures were only obtained by Plaintiffs' counsel through its vigorous advocacy on behalf of the Settlement Class.

Moreover, the requested Fee and Expense Amount of $390,000 is well within the range (and indeed below) recent fee awards in similar merger cases in the Sixth Circuit and nationwide where the settlement consisted of supplemental disclosures. *See, e.g.*, *Nichting v. DPL, Inc.*, No. 3:11-cv-00141, slip op., ¶12 (S.D. Ohio Feb. 24, 2012) (approving $700,000 fee and expense award for supplemental disclosures) (Oddo Decl., Ex. 7); *In re Meadowbrook Ins. Group, Inc. S'holder Litig.*, No. 5:15-cv-11057-JCO-MJH, slip op., ¶12 (E.D. Mich. April 7, 2016) (approving $425,000 fee and expense award for supplemental disclosures relating to management's financial projections, the financial analyses performed by the company's financial advisor, and the financial advisor's potential conflicts of interests) (Oddo Decl., Ex. 8); *In re LCA-Vision S'holder Litig.*, No. A1401239, slip op., ¶18 (Ohio Com. Pl.- Hamilton Cnty. Aug. 10, 2015) (approving $562,500 fee and expense award for supplemental disclosures relating to the company's financial projections, the sales process leading up to the merger, conflicts of interest of the financial advisor, and assumptions underlying the analyses performed by the financial advisor, among other things) (Oddo Decl., Ex. 9); *Continuum Capital v. Nolan*, No. 5687-VCL, 2011 Del. Ch. LEXIS 69, at *10 (Del. Ch. Feb. 3, 2011) (approving $525,000 fee and expense award for supplemental disclosures).

### B.     The Contingent Nature of the Fee

Plaintiffs' counsel accepted this case on a contingency fee basis and have received no compensation during the course of this Action.  This factor should be considered in evaluating the reasonableness of the Fee and Expense Amount.  *See In re Broadwing*, 252 F.R.D. at 382 (noting the risk plaintiffs' counsel took "of no payment if the case was unsuccessful").  Because of the contingent nature of the representation in the Action, any award of fees and expense reimbursement to Plaintiffs' counsel has always been at risk and contingent on the result

achieved (as well as on the exercise of this Court's discretion in making any award). Moreover, as the *Broadwing* court also noted, "'the appearance of Plaintiffs' counsel in this case precluded [them] from engaging in other lucrative work.'" *Id.*[19] These factors fully support the Court's approval of the Fee and Expense Amount.

## C. Lodestar Analysis

Collectively, Plaintiffs' counsel expended approximately 718.20 hours of attorney and paralegal time prosecuting the Action on behalf of the Settlement Class. *See* Oddo Decl., ¶55. The work reflected was necessary, performed without duplication to the extent possible, and successfully resulted in the Settlement. As indicated, the regular hourly rates of Plaintiffs' counsel multiplied by the number of hours expended results in a total lodestar of $393,033.00. *Id.* As such, Plaintiffs' counsel's fee request represents a negative lodestar multiple of 0.93, which underscores the reasonableness of the requested fee.[20] Plaintiffs' counsel's fee request also

---

[19] Not surprisingly, Delaware courts, which more frequently face litigation such as this, fully recognize the significance of a contingency fee arrangement when considering fee awards. *See, e.g.*, *Chrysler Corp. v. Dann*, 223 A.2d 384, 389 (Del. 1966); *Seinfeld v. Coker*, 847 A.2d 330, 333-34 (Del. Ch. 2000); *Franklin Balance Sheet Inv. Fund v. Crowley*, C.A. No. 888-VCP, 2007 WL 2495018, at *12 (Del. Ch. Aug. 30, 2007) ("Fee awards should encourage future meritorious lawsuits by compensating the Plaintiffs' attorneys for their lost opportunity cost (typically their hourly rate), the risks associated with the litigation, and premium."); *In re Vitalink Commc'ns Corp. S'holders Litig.*, No. 12085, 1991 WL 238816, at *17 (Del. Ch. Nov. 8, 1991) ("[i]n all fairness, the contingent nature of [counsel's] fee agreement demands a higher fee for [counsel's] work"); *In re Plains Res. Inc. S'holders Litig.*, C.A. No. 071-N, 2005 WL 332811, at *6 (Del. Ch. Feb. 4, 2005) ("[T]he Plaintiffs' counsel were all retained on a contingent fee basis, and stood to gain nothing unless the litigation was successful. It is consistent with the public policy of Delaware to reward this risk-taking in the interests of shareholders.").

[20] This is in accord with case law from other courts, and Plaintiffs' counsel respectfully submit that the multiplier here would be considered reasonable in almost any jurisdiction in this country. *See Rawlings*, 9 F.3d at 517 (holding that the trial court did not abuse its discretion in awarding a multiplier of 3); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) (multiplier of 9.3); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (multiplier

includes a request for reimbursement of costs and expenses, which totaled $23,085.79.  *See* Oddo Decl., ¶58.

### D.    The Complexity of the Litigation

The claims asserted here involved complex factual and legal issues, which Plaintiffs' counsel were necessarily required to analyze and evaluate throughout the course of the Action. Plaintiffs' counsel conducted an extensive factual investigation and analyses of Associated Estates' financial condition, through both SEC filings and non-public financial information, as well as other public statements made by the Company through and by the Individual Defendants, together with news and analyst reports.  Moreover, because of the inherent speed of merger-related litigation, Plaintiffs' counsel were required to complete all of this legal, factual, and financial investigation in an extremely compressed time frame.

Plaintiffs' counsel had to evaluate the value of the proffered additional disclosures in light of the information being obtained through on-going discovery.  Only after considering all available information did Plaintiffs and their counsel conclude that the additional disclosures set forth in the Form 8-K provide ample consideration for the Parties to settle and release the claims in this lawsuit, and provided an excellent result given the litigation risk in such complex merger-

---

of 5); *In re Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, PA.*, 778 F.2d 890 (1st Cir. 1985) (multiplier of 6); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) (multiplier of 8.9 in a derivative action); *Behrens v. Wometco Enter., Inc*., 118 F.R.D. 534, 549 (S.D. Fla. 1988) ("Most lodestar multiples awarded in cases like this are between 3 and 4"), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828 (E.D. Mich. 1998) (recommending multiplier of 2); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) (approving multiplier of 3.7 in a derivative action); *In re Fine Host Corp. Secs. Litig*, No. MDL 1241, 2000 WL 33116538 (D. Conn. Nov. 8, 2000) (approving multiplier of 3.6).

related litigation.  The complexity of the Action favors Court approval of the Fee and Expense Amount.

### E.  The Professional Skill and Standing of Plaintiffs' Counsel

To successfully pursue the Action, Plaintiffs' counsel had to possess expertise in the corporate law governing the fiduciary duties of officers and directors, as well as the knowledge to distill and analyze facts giving rise to Plaintiffs' claims from thousands of pages of documents. The combined talents of Plaintiffs' counsel allowed them to advance claims and theories of liability to pursue the Action, obtain the information they needed to analyze the strength and weaknesses of these claims and bring Defendants to the negotiating table, all to the benefit of Associated Estates' shareholders with the vote on the Merger fast approaching.  Through their efforts, Plaintiffs' counsel could inform the Company's shareholders of previously undisclosed material information, including financial projections that enabled them to value Associated Estates and more knowledgeably exercise their corporate franchise in connection with the Merger.

Aligned against them were some of the most preeminent defense counsel in the country, equally knowledgeable of Delaware and Ohio law and fully capable of capitalizing on any misstep or weakness, and who could draw upon the exceptional resources of their well-regarded regional and national law firms.  The skills and abilities of defense counsel are factors that may be considered in evaluating a fee request.  *See*, *e.g.*, *In re Delphi Corp.  Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008).  As such, the Fee and Expense Amount should be approved.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement, certify the Settlement Class, and award the requested Fee and Expense Amount.

Dated: May 4, 2016                                Respectfully submitted,

                                                 CIANO & GOLDWASSER, L.L.P.


                                                 */s/ J. Matthew Linehan*
                                                 ANDREW S. GOLDWASSER (#0068397)
                                                 J. MATTHEW LINEHAN (#0085286)
                                                 1610 Midland Building
                                                 101 Prospect Avenue, West
                                                 Cleveland, OH 44115
                                                 Telephone: (216) 658-9900
                                                 Facsimile: (216) 685-9920
                                                 asg@c-g-law.com
                                                 mlinehan@c-g-law.com

                                                 *Liaison Counsel for Plaintiffs*

                                                 ROBBINS ARROYO LLP
                                                 BRIAN J. ROBBINS (*pro hac vice*)
                                                 STEPHEN J. ODDO (*pro hac vice*)
                                                 600 B Street, Suite 1900
                                                 San Diego, CA 92101
                                                 Telephone: (619) 525-3990
                                                 Facsimile: (619) 525-3991
                                                 brobbins@robbinsarroyo.com
                                                 soddo@robbinsarroyo.com

                                                 WEISSLAW LLP
                                                 Richard A. Acocelli (*pro hac vice*)
                                                 Michael A. Rogovin (*pro hac vice*)
                                                 Kelly C. Keenan (*pro hac vice*)
                                                 1500 Broadway, 16th Floor
                                                 New York, NY 10036
                                                 Telephone: (212) 682-3025
                                                 Facsimile: (212) 682-3010
                                                 racocelli@weisslawllp.com
                                                 mrogovin@weisslawllp.com
                                                 kkeenan@weisslawllp.com

                                                 *Co-Lead Counsel for Plaintiffs*

1092154

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2106, a copy of foregoing *Memorandum of Law in Support of Plaintiffs' Motion for: (i) Final Approval of Settlement; (ii) Certification of Settlement Class; and (iii) Approval of Request for an Award of Attorneys' Fees and Expenses* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

*/s/ J. Matthew Linehan*
ANDREW S. GOLDWASSER (#0068397)
J. MATTHEW LINEHAN (#0085286)
CIANO & GOLDWASSER, L.L.P.
1610 Midland Building
101 Prospect Avenue, West
Cleveland, OH 44115
Telephone: (216) 658-9900
Facsimile: (216) 685-9920
asg@c-g-law.com
mlinehan@c-g-law.com

- 34 -